UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
MARYLYN WALTZER,                        :
                        Plaintiff,      :
                                        :
            -v-                         :       09 Civ. 288 (DLC)
                                        :
TRIUMPH APPAREL CORP. f/k/a DANSKIN,    :       OPINION and ORDER
INC.,                                   :
                        Defendant.      :
----------------------------------------X

Appearances:

For plaintiff:
David Abrams
David Abrams, Attorney at Law
305 Broadway, 5th Floor
New York, NY 10007

For defendant:
Steven Seltzer
Yuen Roccanova Seltzer & Sverd LLP
132 Nassau Street
New York, NY 10038

DENISE COTE, District Judge:

      In September 2007, Triumph Apparel Corporation, formerly

known as Danskin, Inc. ("Triumph"), fired Marilyn Waltzer

("Waltzer") after approximately one year of employment when she

refused either to accept part-time employment or to remain at

work until 3:00 p.m. on Fridays.  Asserting that Triumph refused

to accommodate her religious observance of the Jewish Sabbath,

Waltzer has sued for employment discrimination under Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§§ 2000e et seq., and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.  Following a
bench trial on February 16, 2010, and for the reasons described
below, judgment shall be entered for the defendant.

Waltzer filed this action on January 12, 2009, alleging
employment discrimination on the basis of age, disability and
religion.  Waltzer abandoned her age and disability
discrimination claims and they were dismissed on December 7,
2009.

Following the close of discovery and with the consent of
the parties, the trial was conducted in accordance with the
Court's Individual Practices: the direct testimony of the
witnesses was presented through affidavits submitted with the
pretrial order.  Waltzer presented her own affidavit,[1] and did
not call any other witness.  Triumph presented affidavits from
Cindy Ferrara ("Ferrara"), Vice President of Production at
Triumph from September 1999 until December 14, 2009; and Lena
Vladsky ("Vladsky"), Human Resources Director at Triumph from
December 18, 2000 through July 29, 2009.  Waltzer, Ferrara, and
Vladsky appeared at trial and were cross-examined.  Triumph also
offered excerpts from Waltzer's deposition testimony.

Prior to trial, Waltzer moved in limine to prevent Triumph
from presenting evidence that accommodating Waltzer's request to

---

[1] Waltzer submitted a supplemental affidavit addressed to issues
of diversity jurisdiction.

leave work before 3:00 p.m. on Fridays would have constituted an undue hardship.  That motion was denied.  Triumph moved <u>in limine</u> to preclude Waltzer from introducing into evidence three excerpts from testimony given at the plaintiff's New York State Department of Labor Unemployment Insurance hearing.  Triumph's motion was granted as to two of the three excerpts.[2]

This Opinion constitutes the findings of fact and conclusions of law following the February 16 bench trial.  The factual findings are principally set forth in the first section of this Opinion, but appear as well in the final section.

<u>FINDINGS OF FACT</u>

<u>Waltzer's Homes and Religious Observance</u>

The plaintiff purchased a condominium in Haverford, Pennsylvania ("the Pennsylvania condo") in April 2004.  No one shares the condo with her, but one daughter lives just blocks away and another daughter lives nearby.  While employed at Triumph, Waltzer usually stayed at her Pennsylvania condo from Friday to Sunday afternoon.

Waltzer is Jewish and for the last 15 years has observed the Jewish Sabbath or Shabbat.  Waltzer explains that her observance requires her to refrain from working or traveling between sundown on Friday evening and sundown on Saturday

---

[2] The remaining motions <u>in limine</u> were rendered moot.

evening.   A lighting of candles just before sundown and saying prayers over the candles, wine and challah after sundown constitute her acts of observance of the Sabbath.   While she is permitted to eat during Shabbat, the act of eating is not part of her religious observance.

Waltzer asserts that in the winter, the sun can set as early as 4:25 p.m.   She acknowledges that the time of sunset fluctuates throughout the year.   It was her practice to shop for food and cook on Friday afternoon before sundown, but those activities did not constitute her observance of Shabbat. Approximately once a month, Waltzer shared the Friday night prayers and meal with her daughter who lived two blocks from the Pennsylvania condo.

Waltzer has rented an apartment in New Jersey since at least 2004.   Some months before she began working at Triumph, Waltzer rented a one-bedroom apartment with an efficiency kitchen[3] on the top floor of a home in West New York, New Jersey ("the New Jersey apartment").   During her employment with Triumph, Waltzer lived in the New Jersey apartment from Sunday evening through Friday morning.   Waltzer has, however, observed Shabbat at the New Jersey apartment a few times and there is no religious reason why she could not do so every weekend.

---

[3] The kitchen consisted of a two-burner stove, a sink, and a small refrigerator.

Waltzer's practice was to leave work on Friday and take a bus from the Port Authority in Manhattan to New Jersey, where she picked up her car.  This portion of her trip took up to one hour, but sometimes far less time.  Waltzer then drove to the Pennsylvania condo, a trip which could take up to an additional two hours.  Thus, Waltzer's commute from Triumph's offices in New York City to the Pennsylvania condo could take as long as three hours.  Waltzer preferred to observe Shabbat in Pennsylvania because her daughters lived there and because it was more pleasant being there than spending the weekend at her New Jersey apartment.

Fall 2006:  Waltzer's Hiring

Triumph is in the business of designing, producing and marketing yoga, fitness, gymnastics, dance and casual wear for women.  Until December 2009, it was the official licensee, designer, and distributor for a complete line of Danskin apparel and fitness equipment.  Waltzer applied for a position as a product development manager in mid-September, 2006.

On the resume she gave Triumph, Waltzer listed the New Jersey apartment's address and a telephone number with a "914" or Westchester area code.  Waltzer was using two different resumes to apply for jobs at that time.  She used a resume with her Pennsylvania address when applying for jobs in Pennsylvania

and the resume with her New Jersey address when applying for
jobs in New York City.  The three jobs she listed on her resume
for the years 1997 to 2006 were all identified as businesses in
New York City.  The resume described her responsibilities in her
current employment as overseeing her employer's Wal-Mart
account.

Ferrara interviewed Waltzer twice for the position.  At
first, Waltzer asked if she could work four days a week, and
Ferrara replied that she could not.  Waltzer then advised
Ferrara that she needed to leave early on Fridays to observe the
Jewish Sabbath.  Waltzer did not tell Ferrara that she had a
home in Pennsylvania and wanted to travel to Pennsylvania on
Fridays.  Understanding that Waltzer lived in West New York,
Ferrara assured Waltzer that she could leave early on Fridays.
Neither woman discussed a specific time.

Triumph offered Waltzer a job at an annual salary of
$95,000 in a letter dated October 10, 2006 that was addressed to
Waltzer's New Jersey apartment.  Waltzer began work on October
16 as a product development manager.  In an "application" for
employment dated October 16 that went to Triumph's payroll
department, Waltzer listed the address of the Pennsylvania condo
and indicated that she wanted a full-time position.

When she began her employment, Waltzer received a copy of
the company Handbook.  It advised her that the company prohibits

discrimination and harassment based on religion.  Employees who believed that had been treated in "an unlawful, discriminatory manner" were advised to report the incident promptly to their supervisor, department head, or to Human Resources.

Waltzer worked in the company's "Danskin Now" division, which was responsible for developing clothing lines for Wal-Mart.  Its offices were located on Seventh Avenue in Manhattan. Waltzer was the highest-paid employee in her department of six employees.  The job description for product development manager lists the "essential duties and responsibilities" as including: overseeing daily information flow and communicating issues between design, merchandising and production; monitoring the garment fit sessions and fit approvals; and supervising the work activities of production technicians and monitoring the performance of staff.  Waltzer directly supervised two employees, Ivy Yee and Igor Jong.  The "Danskin Now" division was a "high pressure" division and Wal-Mart was considered a particularly demanding client.  Waltzer's work required her to be physically present in the office.  It required about three months of training to learn the position of product development manager in that division.  Ferrara was Waltzer's immediate supervisor.

Waltzer's Friday Departures:  Fall 2006 to Spring 2007

From the fall of 2006 to the spring of 2007, Waltzer left work between noon and one o'clock on Friday afternoons.  When she left, she would email everyone in her department to inform them that she was leaving.  In the spring, Waltzer did not come into work on a number of Fridays, representing that she could accomplish more by working from home.

By the spring of 2007, employees from Waltzer's department were complaining to Vladsky that Waltzer "always left early, was never in the office and that they could never find" her.  There were also complaints that she was behind in her work.  Ivy Yee in particular complained about Waltzer's job performance.  In response to these complaints, Ferrara reduced Waltzer's responsibilities.  Ferrara reassigned the tasks of fitting and preparing the garments for production.  Vladsky and Ferrara discussed the various "problems" with Waltzer's performance but took no action since Waltzer was scheduled to take medical leave for hip replacement surgery.  Waltzer was on medical leave from June 18, 2007 to August 27, 2007.  Triumph treated this leave as leave under the Family Medical Leave Act even though Waltzer had not yet been at the company long enough to qualify for such leave.  Waltzer advised her supervisor that she would be recuperating at her daughter's home in Pennsylvania.

While Waltzer was away, Ferrara assumed all of her duties and discovered even more deficiencies in Waltzer's performance. She learned that Waltzer was behind in her work and that there was an insufficient level of detail in her manufacturing instructions, which led to delays and inefficiencies.  During the same period of time, the workload for Waltzer's department increased dramatically.  Wal-Mart wanted Triumph to develop twice as many garment styles for the Fall 2008 line as it had developed for the Summer 2008 line.  As a response to the increased demand, Triumph hired at considerable expense a temporary employee with technical sketching expertise, Igor Jong, to assist in product development.  Ferrara concluded that Waltzer could not perform her job adequately if she continued to leave at mid-day on Fridays upon her return from her medical leave.[4]

Fall 2007:  Triumph Terminates Waltzer's Employment

When Waltzer returned from medical leave, Ferrara discussed her concerns about Waltzer's performance with her and told her that she would be required to work until 4:00 on Fridays.  A series of early September emails to Waltzer reflect the

---

[4] Fridays are a busy day in general at Triumph due to the need to communicate with Asian factories; Asian factories work on Saturdays.  Nonetheless, in 2007 and in 2008, Triumph had a policy of closing the office at one o'clock on Fridays between the end of May and the end of August.

company's displeasure with Waltzer's performance and its demands
that she make more of an effort to perform her job and work
until late afternoon on Fridays.  During these discussions,
Waltzer challenged Ferrara to fire her if she was so unhappy
with Waltzer's work.

On September 7, Ferrara asked Waltzer via email if she had
established her "new leave early time for Fridays," noting that
she had spoken to Vladsky and Vladsky had told Ferrara that "our
policy is 4:00 on Friday for religious reasons."  The email
asked Waltzer, "Are you in agreement and is this settled?"
Waltzer said that she did not agree, replying that when she was
hired it was "with the understanding" that she "worked half a
day on Fridays for personal reasons."  Waltzer asserted that she
worked many extra hours during the rest of the week to get the
job done.  When pressed again by Ferrara to stay until four
o'clock, Waltzer said that it was "impossible" because she
"need[ed] to go home and prepare for Shabbat."  In response,
Ferrara stated that "we are at an impasse because you need to be
here on Fridays until 4:00.  We can adjust that time as sundown
arrives earlier in the winter months to 3:30, but that will be
the most we can accommodate."

After this email exchange, Waltzer, Ferrara, and Vladsky
continued to discuss Waltzer's Friday departure time in three
meetings on September 10, 14 and 17.  Vladsky took

contemporaneous notes of these meetings in her role as the Human Resources Director.  At no point during these discussions, or indeed at any point during her employment with Triumph, did Waltzer tell her employer that she wanted to leave at 1:00 p.m. on Fridays because she was driving to Pennsylvania for Shabbat. Because Ferrara and Vladsky believed that Waltzer was commuting to New Jersey to observe Shabbat, they asked questions in an effort to understand why Waltzer needed to leave at mid-day on Fridays.  Waltzer explained to them that she needed to "go to the kosher butcher," and to relax and prepare mentally for Shabbat.

In the September 10 meeting, Waltzer insisted on leaving at twelve o'clock, while Vladsky and Ferrara insisted that she stay until four.  They later relented and offered to allow her to leave at 3:30 p.m. on Fridays.  Finally, on September 14, Vladsky and Ferrara offered Waltzer a three o'clock departure time during winter months.  In a September 17 meeting among the three, Waltzer insisted on a one o'clock departure time.[5] Ferrara and Vladsky then offered Waltzer the option of working part-time either three or four days a week, not including Fridays, with a commensurate salary reduction.  Waltzer rejected this last option.  At that point, Triumph fired the plaintiff.

---

[5] Waltzer's assertion that she revised her demand to request a 2:00 p.m. departure time is not credible, but would in any event make no difference to the analysis of her claims.

At no time during her employment did Waltzer complain to anyone
at Triumph that she was being treated improperly on account of
her religion.

Since the plaintiff's discharge in September 2007, she has
looked for but has not found employment.  Triumph learned for
the first time during Waltzer's unemployment compensation
hearing in 2008 that Waltzer had been commuting to a home in
Pennsylvania on Fridays.  When Waltzer used the address for the
Pennsylvania condo on her paperwork for disability benefits
while on medical leave in 2007 and was asked for an explanation
of the Pennsylvania address, she had falsely explained that she
was staying at her daughter's home in Pennsylvania while she
recuperated and she wanted her mail to be sent to that address
during her convalescence.


CONCLUSIONS OF LAW

Waltzer brings two claims of religious discrimination.  She
asserts a violation of Title VII and of the NYCHRL.

Title VII

Title VII prohibits discrimination in employment on the
basis of religion.  An employer may not "discharge any
individual, or otherwise . . . discriminate against any
individual with respect to his compensation, terms, conditions,
or privileges of employment, because of such individual's . . .

religion." 42 U.S.C. § 2000e-2(a)(1).  Title VII defines
"religion" to include "all aspects of religious observance and
practice, as well as belief, unless an employer demonstrates
that he is unable to reasonably accommodate to an employee's or
prospective employee's religious observance or practice without
undue hardship on the conduct of the employer's business."  Id.
§ 2000e(j).

To make out a prima facie claim of religious discrimi-
nation, plaintiffs must show that "(1) they held a bona fide
religious belief conflicting with an employment requirement; (2)
they informed their employers of this belief; and (3) they were
disciplined for failure to comply with the conflicting
employment requirement."  Baker v. The Home Depot, 445 F.3d 541,
546 (2d Cir. 2006) (citation omitted).  Any inquiry into a
plaintiff's religious belief is restricted to an examination of
whether the belief is sincerely held.  Philbrook v. Ansonia Bd.
of Educ., 757 F.2d 476, 481-82 (2d Cir. 1985), aff'd and
remanded, 479 U.S. 60 (1986).  The Second Circuit has explained:
"the judiciary is singularly ill-equipped to sit in judgment on
the verity of an adherent's religious beliefs.  Mindful of this
profound limitation, our competence properly extends to
determining whether the beliefs professed by a claimant are
sincerely held and whether they are, in his own scheme of
things, religious."  Patrick v. LeFevre, 745 F.2d 153, 157 (2d

Cir. 1984) (citation omitted).  The test for sincerity "seeks to determine an adherent's good faith in the expression of his religious belief . . . [as] a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." Id.  While Title VII forbids religious discrimination, it does not require an employer "to accommodate what amounts to a purely personal preference." E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002) (citation omitted).

Once the plaintiff establishes a prima facie case, the employer "must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." Baker, 445 F.3d at 546 (citation omitted).  An accommodation is not a reasonable one if it does not "eliminate the conflict between the employment requirement and the religious practice." Id. at 548.  An accommodation may be unreasonable if it causes an employee "an inexplicable diminution in his employee status or benefits . . . .  In other words . . . if it imposes a significant work-related burden on the employee without justification, such as the neutral operation of a seniority system." Cosme v. Henderson, 287 F.3d 152, 160 (2d Cir. 2002).

"In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment." Id. at 158.  The Equal Employment Opportunity Commission ("EEOC") publishes a Compliance Manual to provide guidance and instructions for investigating claims under the statutes enforced by the EEOC.[6] With respect to the employee's responsibility to cooperate in negotiating a reasonable accommodation, the Compliance Manual instructs:  "If the employer requests additional information reasonably needed to evaluate the request, the employee should provide it."  It also notes that

> courts have ruled against employees who
> refused to cooperate with an employer's
> requests for reasonable information when, as
> a result, the employer was deprived of the
> information necessary to resolve the
> accommodation request.  For example, if an
> employee requested a schedule change to
> accommodate daily prayers, the employer
> might need to ask for information about the
> religious observance, such as time and
> duration of the daily prayers, in order to
> determine if accommodation can be granted
> without posing an undue hardship on the
> operation of the employer's business.

EEOC Compliance Manual § 12-IV(A)(2) (July 22, 2008).  Employees are "not entitled to hold out for the most beneficial accommodation," Baker, 445 F.3d at 548 (citation omitted), and

---

[6] The Second Circuit has relied on the EEOC Compliance Manual in interpreting the requirements of Title VII.  See, e.g., Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 179 (2d Cir. 2005).

the "employer need not offer the accommodation that the employee prefers.  Instead, when any reasonable accommodation is provided, the statutory inquiry ends." Cosme, 287 F.3d at 158.

The question of undue hardship arises only when an employer claims that it "cannot afford any reasonable accommodation without such a hardship." Baker, 445 F.3d at 548 (quoting Ansonia Bd. of Educ. v. Philbrook, 479 U.S. at 68, 69).  To require an employer to "bear more than a de minimis cost" in order to provide an accommodation is an undue hardship. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977).  See also Baker, 445 F.3d at 548.

Waltzer has failed to carry her burden of establishing a prima facie claim of religious discrimination.  While she has shown that she sincerely believed that she could neither work nor travel during the Jewish Sabbath, which lasts from sundown on Friday through sundown on Saturday, she has not shown that she sincerely believed that she needed to leave work before 3:00 p.m. in order to observe her religion.  The undisputed testimony establishes that she could have followed each practice and custom she identified as necessary to the observance of her religion by commuting to either her New Jersey apartment or her Pennsylvania home depending on the time of sunset.  For the summer months (when Triumph closed at 1:00 p.m.) and many other weeks of the year when sundown comes after 6:00 p.m., Waltzer

had sufficient time to commute to her Pennsylvania home; the remainder of the year she had more than enough time to travel to her New Jersey apartment.[7]  Because Waltzer never explained to her employer that she was living in Pennsylvania and needed three hours to commute to Pennsylvania each Friday, she also failed to advise her employer that her preferred manner of practicing her religion required her to leave work three hours before sundown on Fridays.  Having chosen to conceal from her employer that she was commuting to Pennsylvania, Waltzer explained that she needed the extra time on Fridays to go to the kosher butcher and to prepare herself mentally for the Sabbath.  For this same reason, Waltzer has not shown that Triumph fired her for failing to comply with a requirement of her employment that conflicted with a bona fide religious belief.

Moreover, Triumph has shown that it offered Waltzer a reasonable accommodation to her religious practice when it permitted her to leave early enough each Friday to travel to her declared home in New Jersey to observe the Sabbath.  Triumph has shown that a 3:00 p.m. departure time was sufficiently early to give Waltzer enough time to travel to her New Jersey home even in the heart of the winter.  Triumph even offered to let Waltzer work part-time if she did not want to work on Fridays.

---

[7] For more than half the year, sundown comes after 6:00 p.m. in Haverford, Pennsylvania.  Sundown comes before 6:00 p.m. between a date in October and a date in March.

Finally, Triumph has also shown that accommodating Waltzer's request to leave hours earlier than the rest of her office staff would have imposed an undue hardship on her employer. Waltzer was a supervisor with significant responsibilities and a salary commensurate with those responsibilities. Triumph has shown that Waltzer's absence from her office for hours every Friday interfered substantially with the efficient operation of Triumph's business.

It speaks volumes that Waltzer did not tell her supervisor and the human relations officer with whom she was negotiating in the fall of 2007 that she needed the entirety of Friday afternoon to travel to Pennsylvania. If Waltzer believed that her religion required that accommodation, then she would not have hesitated to disclose her destination as she demanded this special treatment from her employer. Underscoring the lack of a connection between her religious beliefs and her 1:00 departure demand is the fact that Waltzer wanted to leave invariably at 1:00 p.m. even though the time of sundown fluctuates throughout the year.

Waltzer makes two principal arguments in support of her claim. She asserts that she clearly advised both Ferrara and Vladsky that she had a home in Pennsylvania, that she wanted to observe Shabbat at that home, and that that was the reason she needed to leave by noon or at least by 1:00 p.m. every Friday.

18

This assertion is not credible.  Tellingly, it was not part of her direct testimony.  Both Ferrara and Vladsky were entirely credible in their testimony that Waltzer never advised them that she was commuting to Pennsylvania for the weekend and observing Shabbat there.  In contrast, Waltzer was not credible.  Her assertions were undercut by not only her demeanor on the stand, but also by the fact that each of the trial witnesses recounted conversations that would only have occurred because Waltzer was concealing her travel to Pennsylvania.  If Waltzer had admitted that she had a three hour trip to make to Pennsylvania every Friday afternoon, she would not have needed to invent explanations for her early departure, such as the need to visit the kosher butcher, to relax, and to prepare mentally for Shabbat before sundown arrived.

Of course, even if Waltzer had revealed that she was commuting to Pennsylvania, she would still have needed to show that that travel was an essential component of her religious observance.  That she failed to do.

Waltzer also argues that Triumph did not carry its burden of showing that honoring the 1:00 p.m. departure time she had been given when hired would have worked an undue hardship on its operations.  First, Waltzer did not establish at trial that Triumph had ever agreed that Waltzer could leave each Friday at 1:00.  She did show, however, that her practice had been to

19

leave mid-day on Fridays[8] and that Triumph made its first
objection to this practice after Waltzer returned from her
disability leave.  For its part, Triumph established that
Waltzer was not performing as it expected and needed, and that
it believed she needed to spend more time on the premises
collaborating with the employees in her department if the
deficiencies had any chance of being rectified.  Triumph
presented persuasive documentary and testimonial evidence that
Waltzer's shortened workday on Friday created an undue hardship
on the company.  This showing is not undercut by the fact that
the company as a whole closed on Fridays at 1:00 p.m. in the
summer.  Waltzer's physical presence was required so that she
could work collaboratively with company employees.  When they
were not there, there was no need for her to be there either.


New York City Human Rights Law

     Waltzer's NYCHRL claim fares no better.  The NYCHRL
prohibits discrimination in employment on the basis of religion.
Specifically,

          (a) It shall be an unlawful discriminatory
          practice for an employer . . . to impose
          upon a person as a condition of obtaining or
          retaining employment any terms or
          conditions, compliance with which would
          require such person to violate, or forego a

---

[8] The New Jersey Turnpike records provide strong evidence that
Waltzer habitually left Triumph on Fridays long before 1:00 p.m.

practice of, his or her creed or religion,
including but not limited to the observance
of any particular day or days or any portion
thereof as a sabbath or holy day or the
observance of any religious custom or usage,
and the employer shall make reasonable
accommodation to the religious needs of such
person.  Without in any way limiting the
foregoing, <u>no person shall be required to
remain at his or her place of employment
during any day or days or portion thereof
that, as a requirement of such person's
religion, he or she observes as a sabbath</u> or
other holy day, <u>including a reasonable time
prior and subsequent thereto for travel
between his or her place of employment and
his or her home</u>, provided, however, that any
such absence from work shall, wherever
practicable in the judgment of the employer,
be made up by an equivalent amount of time
at some other mutually convenient time.

(b) "Reasonable accommodation," as used in
this subdivision, shall mean such
accommodation to an employee's or
prospective employee's religious observance
or practice as shall not cause undue
hardship in the conduct of the employer's
business.  The employer shall have the
burden of proof to show such hardship.

<u>Id.</u> § 8-107(3) (emphasis supplied).

The Local Civil Rights Restoration Act of 2005, N.Y.C.

Local Law No. 85 (2005) (the "Restoration Act"), amended the

NYCHRL to, in part, "abolish parallelism between the [NYCHRL]

and federal and state anti-discrimination law." <u>Loeffler v.</u>

<u>Staten Island Univ. Hosp.</u>, 582 F.3d 268, 278 (2d Cir. 2009).

Therefore, the Restoration Act requires courts to review claims

under the NYCHRL "independently from and more liberally" than

their federal counterparts.  Id. (citation omitted).  Under the
Restoration Act, "[i]nterpretations of New York state or federal
statutes with similar wording may be used to aid in
interpretation of [NYCHRL], viewing similarly worded provisions
of federal and state civil rights laws as a floor below which
the [NYCHRL] cannot fall."  Id. (citing Restoration Act § 1).
Nonetheless, Title VII's analytical framework continues to apply
to NYCHRL claims.

    The NYCHRL specifies that a reasonable accommodation
includes "a reasonable time prior and subsequent [to observance
of a Sabbath day] for travel between his or her place of
employment and his or her home."  N.Y.C. Admin. Code § 8-
107(3)(a).  The word "home" is not defined in § 8-107 or in the
statute's definitions.  See N.Y.C. Admin. Code. § 8-102
("Definitions").

    Even though the NYCHRL must be interpreted more generously
than Title VII, Waltzer has failed to show a violation of this
statute.  With certain restrictions, the NYCHRL requires an
employer to allow an employee to leave work early in order to
travel home to observe the Sabbath.  By offering to allow
Waltzer to leave work as early at 3:00 p.m. in the winter or to
work part-time, Triumph provided two alternative accommodations
to Waltzer, either of which complied completely with the NYCHRL.

22

Waltzer's NYCHRL claim is denied as well for the same reasons that her TVII claim fails.


CONCLUSION

The Clerk of Court shall enter judgment for the defendant and close the case.


SO ORDERED:

Dated:    New York, New York
          February 18, 2010

_____
        DENISE COTE
United States District Judge